UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 13-20928

CHARLES JAMES MILLER,

    Defendant.
                                          /

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUPPRESSION OF EVIDENCE**

Defendant Charles James Miller faces seven charges, including two counts of Production of Child Pornography, 18 U.S.C. § 2251(a), two counts of Possession of Child Pornography, 18 U.S.C. § 2252(a)(5)(B), Possessing with Intent to Distribute Controlled Substances, 21 U.S.C. § 841(a)(1), being a Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1), and Possession of Firearms in Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 924(c).

Before the court is Defendant's motion to suppress evidence of his possession and production of child pornography which, he argues, police obtained during the execution of a valid search warrant but nonetheless in violation of his Fourth Amendment rights. On June 23, 2014, the court held an evidentiary hearing to receive testimony and argument on the motion. Defendant presented testimony of Gregory Marshall, an Assistant Computer Administrator employed by the Public Defender's Office. The Government did not present any witnesses. Following the Supreme Court's decision in *Riley v. California*, No. 13-132 (U.S. June 25, 2014), the court ordered the

parties to submit supplemental briefing. For the following reasons, the court will deny Defendant's motion.

## I. BACKGROUND

Police conducted a two-month investigation of Defendant on suspicions that he was a felon in possession of firearms and was selling prescription drugs and other narcotics from his home. Based mainly on information from a confidential source, police sought a warrant to search the residence. On October 2, 2013, a state judge authorized a warrant, permitting the search and seizure of:

> All suspected marijuana and "Watson 503" pills. All items used in connection with the use, manufacturing, storage, transportation, sales and/or concealment of marijuana and Watson 503. All items establishing ownership, control, occupancy, or possession of the above described place. Any and all firearms.

(Dkt. #16-1, Pg. ID 76.) Police executed this warrant that same day. During their search, officers discovered that the residence had an extensive camera surveillance system and a hidden "control room" that housed video monitoring equipment, controlled substances, money, a safe, and a loaded hand gun.

While searching the control room, Detective Wise picked up and turned on a small Nikon Coolpix digital camera. He examined the camera and discovered an image of two young girls engaged in sexual acts. Upon discovering the image, Detective Wise immediately turned off the camera. He logged the item on the search warrant as seized, but later noted that officers had accidentally left the camera at Defendant's residence. Police successfully secured numerous other items from the search, including Defendant's Sony laptop computer, the seizure of which is not independently contested.

The next day police applied for a second search warrant in order to search Defendant's residence for evidence of child pornography production and possession. Police established probable cause for this second search by citing Detective Wise's observation of child pornography on Defendant's camera and Defendant's 2010 arrest on allegations that he sexually assaulted his six-year-old granddaughter. Again, a state judge authorized the warrant request. In the second search, police seized the Nikon Coolpix camera as well as other cameras, computers, software, hard drives, and several sexual aids. On October 4, 2014, police applied for a third warrant, again citing Detective Wise's observation of the camera's pornographic photo to establish probable cause. A state judge authorized this third warrant, and during its execution officers reviewed the content of Defendant's electronic devices.

A forensic review of Defendant's electronic devices uncovered more evidence of child pornography. Specifically, the Nikon Coolpix Camera contained eighty-one images of the same two girls, determined to be ages seven and nine, engaged in sexually explicit acts; a Compaq Computer Tower contained approximately three images of suspected child pornography; the Sony Laptop Computer, which police seized in their first search, contained hundreds of images of child pornography from the internet, over 1,200 homemade pornographic images, and dozens of homemade pornographic videos of the same two minors. Police identified and located the two girls depicted in the images and videos, and the girls confirmed that Defendant took the photos.

On January 9, 2014, the FBI applied for a fourth search warrant in order to examine Defendant's home surveillance camera. The FBI established probable cause,

in part by again citing Detective Wise's initial observation of child pornography on Defendant's camera. Executing this warrant, the FBI seized yet additional evidence of Defendant's possession and production of child pornography.

## II. DISCUSSION

The Fourth Amendment of the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Defendant argues that the search of his Nikon Coolpix digital camera exceeded the scope of the initially-authorized search warrant, violated his expectation of privacy, and was a constitutionally unreasonable search and seizure. Defendant moves to suppress all evidence of child pornography, arguing that because the initial search of the camera was illegal, all derivative searches and seizures constitute inadmissible fruit of a poisonous tree.

### A. Scope of the First Search Warrant & Forfeiture Concerns

Defendant contends that police exceeded the scope of the original search warrant, which only authorized officers to search for evidence connecting Defendant to drug trafficking and illegal possession of firearms. He asserts that the camera and its contents were unrelated to any drug or firearms investigation, and that therefore Detective Wise exceeded the scope of the authorized search by examining the contents of Defendant's camera.

Police must follow the terms of a warrant that is particularized and narrowly

4

focused. *See United State v. Hare*, 589 F.2d 1291, 1294 (6th Cir. 1979); *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003). The court assesses Detective Wise's conduct by determining if his actions were objectively reasonable. *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003).

Detective Wise's brief examination of Defendant's camera is consistent with an authorized narcotics search. He discovered the camera in Defendant's "control room" among drugs, scales, and a loaded gun. (Dkt. #18-2, Pg. ID 167.) Given the proximity of the camera to evidence of illicit activity, it was objectively reasonable for an officer in that position to believe that a digital camera might be related to or contain a record of the kind of activity that prompted the search warrant. Additionally, as the government proffers and the Defendant does not meaningfully controvert, law enforcement officers commonly know that drug traffickers take photographs of themselves with their drugs, money, and firearms. *See e.g.*, *United States v. Lucas*, 540 F.3d 168, 177 (6th Cir. 2011); *United States v. Armstrong*, No. 11-89-1, 2012 WL 1744497, at *2 (M.D. Pa. May 15, 2012). Moreover, the warrant authorized a search for evidence that would establish Defendant's ownership or control of the searched residence. A reasonable officer could surmise that a digital camera might contain photographs that would establish ownership, control, or occupancy of a residence. Thus, Detective Wise's search fell within the scope of the authorizing warrant.[1]

---

[1] Further, there is no evidence that police here demonstrated any flagrant disregard for the limitations of the search warrant, the presence of which can persuade a court to invalidate an otherwise legal search. *See United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985).

5

Defendant argues that a digital camera is "different" from other items that a warrant might authorize police to search within for, among other things, occupancy records. At argument, the court attempted without success to glean from Defendant a principle distinguishing images inside a camera from images inside an album. Defendant agreed with the court's proposition that a photo album or a desk drawer could be opened and its contents inspected, but maintained that a camera is "different,"[2] and that police would need specific warrant authorization to search it. Defendant points to several cases where courts required specific warrant authorization for police to search a suspect's electronic devices. First, he notes that in *United States v. Payton*, 573 F.3d 859 (9th Cir. 2009), the court suppressed evidence of child pornography that police discovered on the defendant's computer. In *Payton*, police conducted an authorized drug investigation, but found no evidence of illegal narcotics. Officers then proceeded to search the defendant's computer and discovered evidence of child pornography. *Id.* at 860. The court suppressed this evidence because police had no probable cause linking the defendant's computer to the authorized drug investigation. *Id.* at 864. Additionally, the defendant's computer contained a significant amount of data, making a computer search particularly invasive. *Id.* Defendant's reliance on *Payton* is unpersuasive. As discussed *supra*, police had sufficient evidence connecting Defendant's camera to the warranted search. It was therefore unnecessary for police to obtain additional warrant authorization because the camera was within the scope of the

---

[2] At the hearing, the court asked Defense Counsel to explain how a camera and a desk drawer are different; Defense Counsel demurred and replied that "the very nature of their being" rendered the items distinct.

original warrant.

Defendant also cites the Supreme Court's recent decision in *Riley v. California*, No. 13-132 (U.S. June 25, 2014), which required police to obtain a warrant before searching a suspect's cell phone incident to an arrest. In *Riley*, the Court reasoned that cell phones raise unique privacy concerns because they are ubiquitous, contain immense amounts of data, and host an assortment of information, including documents, audio files, photographs, videos, internet history, call logs, communications, and GPS information. In this way, cell phones are "mini-computers" that "differ in both quantitative and qualitative sense from other objects that might be kept on an arrestee's person." *Id*. at 17. *Riley* held that police conducting searches incident to an arrest could not search an arrestee's cell phone absent a warrant authorizing them to do so.

*Riley* is both factually and legally distinguishable. First, *Riley* involved a warrantless search incident to arrest, while this case involves a warranted search of a home. A different mode of analysis pertains to each. Second, the search of Defendant's camera does not raise the same privacy concerns as a cell phone. Dedicated cameras, unlike cell phones, are unlikely to be used on a continuing, daily basis, and therefore do not boast the extensive amount of personal information commonly present in cell phones. Contemporary cell phones are commonly understood to be much more than telephones. Frequently they will record an individual's internet browsing history, a list of that individual's contacts, calls, and text messages, as well as detailed GPS data revealing the individual's movements. In contrast, cameras contain a limited type of data, restricted to image and video files, that do not touch the breadth or

depth of information that a cell phone's data offers. Digital cameras also hold significantly less data than many cell phones—Defendant's camera had a total capacity of 2 gigabytes, while many common cell phones are able to hold 8 or 16, or even 64 gigabytes of information.

The court does not say that the photo image contents of a camera have *no* capacity for Fourth Amendment protection, but because of its relatively limited capacities, a search of a dedicated digital camera does not pose the same kinds of privacy concerns as does the search of a contemporary "smart phone." Defendant is unable to successfully analogize his case to *Riley* or *Payton*. Accordingly, the search of Defendant's camera fell within the scope of a warranted drug investigation and police did not need specific, additional warrant authorization to search initially within the camera.

Detective Wise's initial assertion that he located the camera for potential forfeiture purposes,[3] and not as part of a drug investigation, does not affect this determination. Detective Wise's subjective motivation for seizing the camera is not determinative; rather the proper inquiry is whether police conduct was objectively reasonable, *Helton*, 314 F.3d at 824, and here, as discussed *supra*, it was objectively reasonable for police to identify Defendant's camera as one small component of their drug distribution investigation.

Still, Defendant argues that police improperly seized his camera for forfeiture

---

[3] Defendant implies that Detective Wise's explanation was artifice intended to conceal an unlawful search of Defendant's camera, but offered no testimony or other proof to support the implication.

proceedings, asserting that there was not a sufficient nexus linking the camera to the aims of the warranted search. *See United States v. Juluke*, 426 F.3d 323 (5th Cir. 2005). He argues that items subject to forfeiture must have a substantial, not just an incidental or coincidental, connection to illegal activity, and that his legitimate source of income from his job means that the police could not reasonably trace the camera to illegal activity. *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

Defendant's argument fails to account for state and federal forfeiture law and ignores the circumstances under which police found his camera. Mich. Comp. Laws § 333.7521 provides that any item may be forfeited if it can be traced to a suspect's illegal drug activity or is used to facilitate a drug offense. A warrant need not specifically identify an item as subject to forfeiture; rather police may seize any item if there is probable cause to believe that it is subject to forfeiture. 18 U.S.C. § 981(b)(2)(A)–(b)(2)(C); Mich. Comp. Laws § 333.7522; *United States v. $149,442.43*, 965 F.2d 868, 875 (10th Cir. 1992). The facts of the discovery of the camera are not in dispute, and based on the its proximity to other items connected to Defendant's drug activity (*e.g.*, scales, money, guns, and drugs), police had sufficient reason to believe that the camera was either a tool used in Defendant's drug trade or constituted proceeds from such illegal activity. With this in mind, police had probable cause to seize Defendant's camera and subject it to forfeiture. The initial search and seizure of Defendant's camera did not exceed the scope of the warrant.

### B.  Defendant's Expectation of Privacy

Defendant argues that even if the seizure of his camera was within the scope of

the authorized search warrant, police still violated his right to privacy under the Fourth Amendment. Citing *Katz v. United States*, 389 U.S. 347 (1967), and *Schlossberg v. Solesbee*, 844 F. Supp. 2d 1165 (D. Or. 2012), he contends that his digital camera should be afforded a particularly high standard of privacy. He urges the court to recognize his reasonable expectation that the contents of his camera were private, evidenced by the fact that the camera was stored in his home and was turned off.

      The fundamental protections of the Fourth Amendment are neither absolute nor unconditional, and generally do not arise where a reasonable expectation of privacy is absent. Defendant's argument is valid, as far as it goes, in asserting that police would not be entitled to a warrantless search of his personal camera absent some exigent need. *See Katz*, 389 U.S. at 361; *Schlossberg*, 844 F. Supp. 2d at 1170. But the initial search of Defendant's residence here was not warrantless. Rather, police were judicially granted the ability to search for evidence of Defendant's illegal drug activity while executing an authorized search warrant. Because a state judge had already determined that police demonstrated probable cause to justify a search, and because the initial search (and intended seizure) of the camera was within the warrant's scope, Defendant had no reasonable expectation of privacy standing in the way of a basic inspection of the camera. *See United States v. Place*, 463 U.S. 696, 701 (1983).

      To the extent that the Defendant argues that police unduly infringed on his expectation of privacy simply by turning on and examining the camera's contents until the subject images were found, the court is persuaded that the searching officer discovered evidence of child pornography only inadvertently, and it appears undisputed

that he immediately—and properly—stopped after confronting the first such image. The Sixth Circuit examined a similar question of privacy and unexpected discovery in *United States v. Lucas,* 640 F.3d 168 (6th Cir. 2011). In *Lucas*, the defendant agreed to allow police to search his home for evidence of marijuana without a warrant. *Id.* at 171. During the investigation, police searched the contents of the defendant's computer and accidentally discovered thumbnail images of child pornography. An officer enlarged a few photographs to confirm their content then immediately stopped his search. *Id.* at 172.

The defendant challenged the extent of the search as an invasion of his privacy. The Sixth Circuit reasoned that "there [was] no evidence that [police] intentionally searched for child pornography and purposefully exceeded the scope [of the narcotics search]." *Id.* at 179. Rather, police inadvertently found child pornography and conducted a minimal examination of a few photographs to confirm their content. The court distinguished these facts from those in *United States v. Carey,* 172 F.3d 1268, 1273 (10th Cir. 1999), where police inadvertently discovered child pornography on the defendant's computer and proceeded subsequently to conduct a five-hour search, with no additional judicial review or justification, for more pornographic photographs. Thereby, they exceeded the scope of the warrant which authorized only a drug investigation. In *Lucas*, the Sixth Circuit compared the police conduct to that in *Carey*, and held that police did not unduly infringe upon the defendant's right to privacy and acted within the scope of their search for narcotics activity because the discovery of child pornography was both unintentional and limited. *Lucas,* 640 F.3d at 179.

*Lucas* importantly informs this court's evaluation of Defendant's claims that his expectation of privacy was violated. As with the search in *Lucas*, police here only inadvertently discovered Defendant's child pornography. There is no evidence whatsoever that police suspected Defendant of possessing or producing child pornography, much less that they intended to investigate him for such activity. Detective Wise inadvertently discovered a single illicit photo during his examination of Defendant's camera.[4] Once he discovered child pornography, he immediately ceased his examination of the camera. These circumstances are well within the bounds of *Lucas*. Police here did not unreasonably infringe on Defendant's expectation of privacy.[5]

---

[4] Based mainly on the testimony of his IT witness, Defendant argues that Detective Wise scrolled through more than 38 digital photos before finding illicit material. Even if accepted as true in the absence of truly direct testimony, *i.e.* from Detective Wise himself, it also remains true that the warrant authorized such a search, permitting police to search through any number of photos for evidence of drugs, guns, and/or ownership or control of the searched residence. The authority of the warrant renders nearly inconsequential the number of photos viewed—or the number of interior doors opened, cabinets peered into, beds looked under, or closets emptied—in executing the warranted search.

[5] Defendant's citation to *Schlossberg* is unpersuasive. *Schlossberg* is a United States District Court opinion, by the assigned magistrate judge, and entitled to only persuasive value at best. It dealt with a person who was arrested and whose camera, seized just before the scuffle that lead to the arrest, was searched without a warrant. *Schlossberg v. Solesbee*, 844 F. Supp. 2d 1165 (D. Or. 2012). In contrast, Defendant's claims pose a problem of accidental discovery, not a problem of arrest accompanied by a warrantless search.

### C. Inevitable Discovery

Even if the examination of some of the contents of Defendant's camera constituted a violation of the Fourth Amendment, the doctrine of inevitable discovery can render the evidence of Defendant's possession and production of child pornography admissible. In *Nix v. Williams,* 467 U.S. 431 (1984), the Supreme Court held that unlawfully obtained evidence that would inevitably be unearthed in the course of a legally conducted investigation is admissible. Under this principle, the government can use otherwise tainted or inadmissable evidence if it can demonstrate by a preponderance of the evidence that "routine [police] procedure" would have lawfully uncovered the same evidence. *United States v. Ford*, 184 F.3d 566, 577 (6th Cir. 1999)*; United States v. Kennedy,* 61 F.3d 494, 500 (6th Cir. 1995).

There is no dispute that on October 2, 2013, police seized Defendant's Sony laptop computer while executing the initial warrant authorizing the search for illegal narcotics activity and firearm possession. (Dkt. #18-2, Pg. ID 167.) Defendant did not contest the seizure of his laptop, though given that opportunity.

There is, however, a dispute about whether, following the seizure of the computer, it would have been catalogued, turned on, and its contents reviewed as part of either the narcotics investigation or for potential forfeiture proceedings. The government asserts that "forfeiture law authorized the[] seizure of the computer" and that "[o]nce in custody of law enforcement, Miller's laptop and camera would have been cataloged, turned on, and looked at before the next step of the forfeiture process took place." But Defendant, in reply, asserts that:

13

> [E]ven assuming that the camera and laptop would have been cataloged and examined as part of the forfeiture process, there is no reason to believe that any search would have been extensive. And given that asset forfeiture raises municipal funds, the devices would have been wiped clean and/or been overwritten in preparation for sale or auction.

(Dkt. # 22, Pg. ID 219.)

This laptop alone contained hundreds of images and dozens of videos of child pornography, some downloaded from the internet and others produced by Defendant. (Dkt. #18, Pg. ID 143.) If these incriminating photographs and videos would have inevitably been unearthed, certainly they would have given rise to probable cause sufficient to authorize one or more additional searches for additional child pornography.

In this regard, the court has been presented with arguments and assertions, but no facts. The government produced no witnesses in support of its contention at the hearing, nor did the single defense witness have anything to say about the subject. The court therefore has no factual foundation on which to base a conclusion, by a preponderance of the evidence, that a routine course of criminal investigations exists in this department that would have lead the police officers involved here to have inevitably discovered evidence that the Defendant possessed and produced child pornography.[6]

Because the court has found sufficient other grounds on which to reject Defendant's motion, the court will not require that this follow-on argument be presented any further. If the government seeks to present evidence in this regard, the government

---

[6]Defendant argues that the initial child pornography was unlawfully obtained under the Fourth Amendment, and therefore all subsequent evidence is tainted as "fruit of the poisonous tree." *See Nardone v. United States*, 308 U.S. 338, 341 (1939); *see Wong Sun v. United States*, 371 U.S. 471, 488 (1963). However, as discussed *supra*, with no Fourth Amendment violation having occurred, Defendant's argument is moot.

may file a notice to that effect in the seven days following the entry of this order, and the evidentiary hearing may be reopened.

### III. FINDING OF EXCLUDABLE DELAY

Defendant's Motion to Suppress was originally filed on March 21, 2014, and initial briefing on the matter was completed on June 6, 2014. However, shortly after the motion hearing was held on June 23, 2014, the Supreme Court's decision in *Riley* necessitated supplemental briefing on the issues presented in Defendant's motion. This briefing was concluded on July 16, 2014. Because of the complexity of the issues presented in Defendant's motion, the court finds that the delay in resolving the motion was necessary for the parties to fully present the issues. The court finds that further delay is necessary to permit the parties to negotiate and consider a resolution of the charges against Defendant.

### IV. CONCLUSION

IT IS ORDERED that Defendant's Motion to Suppress Evidence (Dkt. #16) is DENIED.

IT IS FURTHER ORDERED that pursuant to the Speedy Trial Act, 18 U.S.C. § 3161, and in consideration of the factors listed in sections 3161(h)(1) and 3161(h)(7), the ends of justice are best served by granting a continuance in this case, these ends outweigh the interest of the public and the defendant in a speedy and public trial, and any delay occasioned by this adjournment shall be deemed excludable under the Speedy Trial Act.

IT IS FURTHER ORDERED that the government may file a NOTICE of reopening the suppression hearing on or before **July 30, 2014**. In the absence of such reopening, the parties are directed to appear for a final pretrial/change of plea conference on **August 7, 2014 at 2:00 p.m.** This matter is set for trial on **August 12, 2014 at 9:00 a.m.**

      s/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated: July 23, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 23, 2014, by electronic and/or ordinary mail.

      s/Lisa Wagner  
      Case Manager and Deputy Clerk  
      (313) 234-5522