**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. 13-20928

CHARLES JAMES MILLER

    Defendant.
_____/

**OPINION AND ORDER GRANTING RESTITUTION**

Pending before the court is the matter of whether and in what amount to award restitution to the minor victims of Charles Miller's crimes. The following opinion and order articulates the basis for the court's order that Defendant pay restitution totaling $420,600 to the two minor victims.

**I. BACKGROUND**

On January 9, 2015, Defendant Charles Miller pleaded guilty to one count of production of child pornography in violation of 18 U.S.C. § 2251 and one count of possession of child pornography in violation of 18 U.S.C. § 2252A. The minor victims in this case are Defendant's grandchildren, who Defendant used repeatedly as the subjects of his pornography productions. On August 6, 2015, the court sentenced Defendant to 360 months imprisonment for the production charge and 240 months for the possession charge, with the terms to be served consecutively for a total of 600 months. The court reserved the issue of restitution for further consideration. On October 14, 2015, the court held an evidentiary hearing, pursuant to 18 U.S.C. § 3664(d)(5), to determine the amount of restitution owed to the minor victims.

## II. DISCUSSION

Section 2259 of the criminal code, titled "Mandatory restitution," requires a court to order restitution for the victims of sexually exploitive crimes committed against children. 18 U.S.C. § 2259. The statute mandates that the order will direct the defendant to pay the "the full amount of the victim's losses as determined by the court." *Id.* at § 2259(b)(1). A victim is defined as an "individual harmed as a result of a commission of" the crime at issue. *Id.* at § 2259(c). Compensable losses include "medical services related to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees, as well as other costs incurred; and any other losses suffered by the victim as a proximate result of the offense." *Id.* at §2259(b)(3).

The Government must prove the amount of the victim's losses by a preponderance of the evidence, and the court resolves any disputes as to the amount of restitution by the same standard. *Id.* at § 3664(e). Additionally, the Supreme Court has held that "[r]estitution is . . . proper under § 2259 only to the extent the defendant's offense proximately cause a victim's losses." *Paroline v. United States,* 134 S.Ct. 1710, 1722 (2014). And lastly, the court is prohibited from declining to issue a restitution order because of a defendant's economic circumstances, or because the victim will receive compensation from some other source such as insurance. *Id.* at § 2259(b)(4)(B)(ii).

It is not in serious dispute that the two minor victims (hereinafter MV-1 and MV-2) are victims within the meaning of the statute or that their losses are directly and proximately caused by Charles Miller's sexual abuse. This case involves the actual abuser and producer of the child pornography. Proximate cause is generally at issue when the defendant is one of many end-users (as opposed to the producer), and it is not clear that the defendant's conduct is either a but-for or proximate cause of the victim's loss. In those cases, causation is difficult to determine because of the hundreds

or thousands of other end-users contributing to the victims suffering. *See Paroline*, 134 S.Ct. at 1722-23. At other times, proximate cause may be in dispute where the victim claiming restitution is not the subject of the pornographic material, but is instead a third-party victim, such as a parent, who is harmed in some way. *See United States v. Evers*, 669 F.3d 645, 659-60 (6th Cir. 2012). Neither of those issues are present here. MV-1 and MV-2 were the victim-subjects of the pornography. Charles Miller abused and filmed these small children, and he put their young minds through unimaginable horrors. Referring to the victim in *Paroline*, Justice Kennedy wrote, "[t]he full extent of this victim's suffering is hard to grasp. Her abuser took away her childhood, her self-conception of her innocence, and her freedom from the kind of nightmares and memories that most others will never know." 134 S.Ct. At 1717. Charles Miller's conduct and offenses certainly caused the mental trauma for which these victims now seek treatment. Therefore, § 2259 mandates that a restitution award be made.

The only remaining question is the amount in which restitution is to be awarded. It is extremely difficult to quantify the loss sustained by these minor victims. As one court pointed out, "the resources often available to the parties and the Court in a full blown trial are simply not available in this type of criminal proceeding." *United States v. Baker*, 672 F. Supp. 2d 771, 777 (E.D. Tex. 2009). Moreover, as in this case, the victims of these horrific crimes often lack the financial resources to obtain counsel and experts to put forth fulsome proof of their current and future losses. The statute, however, mandates that the defendant pay the "full amount" of "any costs . . . for physical, psychiatric, or psychological care." 18 U.S.C. § 2259(b). Additionally, the Sixth Circuit and other circuits have recognized that "[s]ection 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse." *United States v. Evers*, 669 F.3d 645, 656 (6th Cir. 2012) (quoting *United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999)).

In this case, the Government has presented the court with victim impact statements and an affidavit from the University of Michigan Law School Child Advocacy Law Clinic, providing a foundation for the estimated losses enumerated in the Government's brief regarding restitution. (Dkt. # 72-2, Pg. ID 682.) The affidavit articulates a reasonable calculation method for the costs the victims are likely to incur throughout their adolescent and early adult years. The Clinic estimated costs based on local counseling service centers and Department of Justice data on the cost of family counseling. The Clinic also consulted with a psychologist at the University of Michigan and, in partnership with the psychologist, reached the conclusion that "at a minimum, each girl should have the financial ability to pursue therapy throughout adolescence (at least the age of 21)." (*Id.* at Pg. ID 683.) Beyond that, the affidavit asserts that counseling through key transitional periods, such as the start of university, entering into adult romantic relationships, and motherhood would be preferable, as these events frequently trigger trauma. Finally, "the potential dissemination of photos or video frequently retraumatizes victims" requiring further psychological treatment.[1]

The court is satisfied that the government has carried its burden in proving by a preponderance of the evidence that MV-1 and MV-2 will need physiological care throughout their adolescence and into their early and middle adult lives. For each victim, the court accepts the Government's cost analysis for a stepped approach to recovery, starting with higher intensity therapy and transitioning to less frequent treatments as the girls age. This includes, trauma therapy, individual counseling with varying frequencies over time, family counseling, and relationship therapy as the girls grow into the need for

---

[1] While the Government has not put forth evidence that Miller distributed the pornographic depictions of his victims, the court concludes that the numerous sexual assaults against these children by their grandfather and the filming of those events are more than enough to justify rather extensive psychological treatment. Additionally, because dissemination of this material is so common and, sadly, easy in the digital age, the threat alone of these photos and videos resurfacing could reasonably trigger psychological trauma.

such services; the Government has shown these services will total $195,300 for each victim. The Government has also, through the affidavit and its briefing, articulated a basis for $17,500 in medication and transportation costs associated with these therapies. Thus, the court will order restitution in the amount of $210,300 for each victim.

While the above losses have been proved, the court does not believe that the Government carried its burden in asserting that MV-1 and MV-2 need "residential treatment to deal with complications that stem from this childhood trauma." (*Id.*) This request was based of the general proposition that "sexual abuse survivors are more likely to experience additional psychiatric complications and substance abuse and addiction." (*Id.*) While this may be true, in the court's judgment, such a determination is premature and not supported by the evidence. This does not, however, preclude the victims from ever recovering for these losses, should they prove necessary later in life. "If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order." 18 U.S.C. § 3664(d)(5). Thus, the court will not order restitution for the requested $40,000 in possible residential treatment.

The Defendant's primary argument against restitution is that he cannot afford to pay the restitution. This line of argument, however, is foreclosed by the statute. It specifically mandates that "a court may not decline to issue an order under this section because of the economic circumstances of the defendant." *Id.* at § 2259(4)(B). Defendant's argument is thus unavailing.

### III. CONCLUSION

5

Accordingly, IT IS ORDERED that Defendant Charles Miller pay restitution in the amount of $210,300 to each victim, MV-1 and MV-2, for a total restitution award of $420,600.

IT IS FURTHER ORDERED that restitution payment is to be made in a lump sum forthwith. If any amount remains unpaid when Defendant's supervision commences, the Defendant shall participate in the Inmate Financial Responsibility Program (IFRP). The court is aware of the requirements of the program and approves the payment schedules of the program and hereby orders the Defendant's compliance. This order may be amended based on Defendant's changed circumstances, pursuant to 18 U.S.C. § 3664(k).

IT IS FURTHER ORDERED that should the Defendant become the beneficiary or otherwise a designated recipient of any amount with a total value of $1,000 or more (including but not limited to the proceeds from gifts, tax returns, inheritances, lawsuit awards, insurance policies, any type of trust, whether distributed in lump sum or deferred, the proceeds of gambling or lottery winnings, or any other such unexpected windfall or receipt of funds), he shall pay those funds, in their entirety up to the unpaid balance, toward the restitution award within 15 days of receipt.

IT IS FURTHER ORDERED that should Defendant be granted supervised release, the Defendant shall make monthly installment payments on any remaining balance of the restitution at a rate and schedule recommended by the probation department and approved by the court.

s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated: November 3, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 3, 2015, by electronic and/or ordinary mail.

                                            <u>s/Lisa G. Wagner</u>
                                            Case Manager and Deputy Clerk
                                            (313) 234-5522